UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP)**, | |
| Plaintiff, | |
| v. | |
| **Michigan Law Review Association**; **University of Michigan**; **Heather Jane Foster**, in both her individual capacity and official capacity as editor-in-chief of the Michigan Law Review; **Nathaniel B. Magrath**, in both his individual capacity and his official capacity as managing editor of the Michigan Law Review; **Delpha Carpenter**, in both her individual capacity and official capacity as executive development editor of the Michigan Law Review; **John Does Nos. 1–4**, in both their individual capacities and their official capacities as members of the Holistic Review Committee of the Michigan Law Review; **Jordan B. Acker, Michael J. Behm, Mark J. Bernstein, Paul W. Brown, Sarah Hubbard, Denise Ilitch, Carl J. Meyers**, and **Katherine E. White**, each in their official capacities as members of the Board of Regents of the University of Michigan; **Timothy G. Lynch**, in his official capacity as vice president and | Case No. 5:25-cv-11837 |

general counsel of the University of
Michigan,

                    Defendants.

# COMPLAINT

Federal law prohibits universities that accept federal funds from discrimi-
nating on account of race or sex. *See* 42 U.S.C. § 2000d (Title VI); 20 U.S.C.
§ 1681 (Title IX); *see also* 42 U.S.C. § 1981 (prohibiting racial discrimination
in the making and enforcement of contracts). The Michigan Law Review is
flouting these requirements by using race and sex preferences to select its
members and articles — a practice that violates the clear and unequivocal lan-
guage of Title VI and Title IX. The plaintiff brings suit to enjoin these illegal
discriminatory practices, and to ensure that all components of the University
of Michigan comply with their obligations under federal anti-discrimination
law.

## JURISDICTION AND VENUE

1.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and
28 U.S.C. § 1343.

2.    Venue is proper because a substantial part of the events giving rise to
the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3.    Plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences
(FASORP) is a voluntary, unincorporated, non-profit membership organiza-
tion formed for the purpose of restoring meritocracy in academia and fighting

race and sex preferences that subordinate academic merit to so-called diversity considerations. FASORP has at least one member who recently applied for membership on Volume 124 of the Michigan Law Review. FASORP's website is at https://www.fasorp.org.

4.   Defendant Michigan Law Review Association is a 501(c)(3) nonprofit corporation organized under the laws of Michigan. It can be served at 625 South State Street, Ann Arbor, Michigan 48109.

5.   Defendant University of Michigan is a non-profit educational institution organized under the laws of the state of Michigan. It can be served at its Office of the General Counsel, 1109 Geddes Avenue, Ruthven Building, Suite 2300, Ann Arbor, Michigan 48109-1079.

6.   Defendant Heather Jane Foster is editor-in-chief of the Michigan Law Review. As editor-in-chief, Foster is a member of the Law Review's "Holistic Review Committee," which selects new student members of the Law Review by awarding illegal race and sex preferences to women, racial minorities, homosexuals, and transgender people, and selects applicants from these preferred demographics over heterosexual and non-transgender white men with better grades and better scores on the components of the Law Review's writing competition. Defendant Foster is sued in both her individual and official capacities.

7.   Defendant Nathaniel B. Magrath is managing editor of the Michigan Law Review. As managing editor, Magrath is a member of the Law Review's "Holistic Review Committee," which selects new student members of the

Law Review by awarding illegal race and sex preferences to women, racial minorities, homosexuals, and transgender people, and selects applicants from these preferred demographics over heterosexual and non-transgender white men with better grades and better scores on the components of the Law Review's writing competition. Defendant Magrath is sued in both his individual and official capacities.

8. Defendant Delpha Carpenter is executive development editor of the Michigan Law Review. As executive development editor, Carpenter is charged with "lead[ing] the journal's diversity, equity, and inclusion efforts." Application Procedures for Electing and Selecting the Volume 124 Editorial Board at 20 (attached as Exhibit 2). Carpenter is also a member of the Law Review's "Holistic Review Committee," which selects new student members of the Law Review by awarding illegal race and sex preferences to women, racial minorities, homosexuals, and transgender people, and selects applicants from these preferred demographics over heterosexual and non-transgender white men with better grades and better scores on the components of the Law Review's writing competition. Defendant Carpenter is sued in both her individual and official capacities.

9. Defendants John Does Nos. 1–4 are members of the Michigan Law Review's "Holistic Review Committee," which selects new student members of the Law Review by awarding illegal race and sex preferences to women, racial minorities, homosexuals, and transgender people, and selects applicants from these preferred demographics over heterosexual and non-transgender

white men with better grades and better scores on the components of the Law Review's writing competition. The Michigan Law Review conceals the identity of the members of its "Holistic Review Committee," apart from the editor-in-chief, managing editor, and executive development editor, so they can operate in secret when selecting new members of the Law Review and escape accountability for the illegal race and sex preferences that they employ. They are sued in both their individual and official capacities.

10.   Defendants Jordan B. Acker, Michael J. Behm, Mark J. Bernstein, Paul W. Brown, Sarah Hubbard, Denise Ilitch, Carl J. Meyers, and Katherine E. White are members of the Board of Regents of the University of Michigan. They can be served at the university's Office of the General Counsel, 1109 Geddes Avenue, Ruthven Building, Suite 2300, Ann Arbor, Michigan 48109-1079. The members of the Board of Regents are sued in their official capacities.

11.   Defendant Timothy G. Lynch is vice president and general counsel of the University of Michigan. He can be served at the university's Office of the General Counsel, 1109 Geddes Avenue, Ruthven Building, Suite 2300, Ann Arbor, Michigan 48109-1079. Defendant Lynch is sued in his official capacity.

## BACKGROUND

12.   The Michigan Law Review is an academic journal edited and operated by students at the University of Michigan Law School. The students select and edit the articles that the Law Review will publish, and they also select the students who will serve as members and editors of the Law Review.

13.   Until recently, membership on the Law Review was an academic honor reserved for students who were selected on account of their first-year grades and their performance on a writing competition.

14.   But left-wing students and affirmative-action devotees at the University of Michigan Law School were unhappy with the demographic makeup produced by merit-based selection. So the Michigan Law Review, with the approval and acquiescence of the University of Michigan general counsel's office, has implemented a corrupt and illegal scheme of race and sex preferences to select its student members.

15.   The Michigan Law Review implements these illegal race and sex preferences by inviting students to submit a 750-word "personal statement" when applying for membership on the Law Review. Applicants are not only permitted but encouraged to identify their race, sex, sexual orientation, and gender identity in the personal statement, even though it is illegal for the Law Review to discriminate on these grounds when selecting student members.

16.   The Michigan Law Review chooses its new members from eligible first-year, transfer, and dual-degree applicants. Applicants must submit a "mini-note," a bluebook exercise, a note proposal, and a personal statement.

All of these are graded and scored by the incumbent student editors, and the applicant's name is concealed to ensure anonymous grading.

17.   Only 40% of the new student members of the Michigan Law Review are chosen based on the raw scores of their mini-note and bluebook exercises. The remaining 60% of the new student members are chosen through a process that the Law Review calls "holistic review," in which the Law Review considers an applicant's mini-note, bluebook exercise, note proposal, first-year grades, and personal statement. But there is no fixed or announced formula for weighing these five different factors, or for deciding which students will be accepted through this "holistic review" process. Instead, the members of the Law Review's "Holistic Review Committee" have unfettered discretion to decide how these five factors will be weighted for each particular applicant, and they are given carte blanche to determine whom they will admit and whom they will reject in the "holistic review" process.

18.   The personal statements are graded by a six- or seven-person "Holistic Review Committee." This committee includes the editor-in-chief, the managing editor, the executive development editor, as well as three or four additional members of the Michigan Law Review. The identity of these additional members of the Holistic Review Committee is kept secret, even from other Law Review editors and members. The Holistic Review Committee also chooses the applicants who will be accepted through the holistic-review process and those who will be rejected.

19.   When the members of the Holistic Review Committee grade the personal statements and decide which applicants to accept, they award illegal and discriminatory preferences to applicants who indicate in their personal statements that they are female, members of an "underrepresented" (*i.e.*, non-Asian) racial minority, homosexual, or transgender. Applicants from these preferred demographics receive higher scores on the personal statement than they would have received had they chosen not to flag these demographic characteristics in their personal statements. Applicants from these preferred demographics are also awarded positions on the Law Review over heterosexual and non-transgender white men who have better grades and better scores on the components of the Law Review's writing competition. The members of the Holistic Review Committee rig the holistic-review process to ensure that the eventual makeup of the incoming Law Review members contains what the committee members regard as a sufficiently "diverse" number of women, non-Asian racial minorities, and homosexual or transgender students. Whatever preferences are needed to attain the desired level of diversity are awarded, both in the grading of the personal statements and in the ultimate selection of Law Review members through the "holistic review" process.

20.   The Law Review's use of race and sex preferences in the grading of personal statements and the holistic-review process is a flagrant violation of state and federal anti-discrimination law. To carry out this regime of illegal race and sex preferences, the Law Review must ensure that all members of the Holistic Review Committee are ideologically committed to the cause of race and

sex preferences and willing to carry out this corrupt and anti-meritocratic scheme. Students who are believed to be conservative or members of organizations such as the Federalist Society are never chosen to serve on the Holistic Review Committee and are never chosen for editorial positions that entail a place on the Holistic Review Committee, because these students would resist or expose the Law Review's use of illegal race and sex preferences when selecting student members.

21.   The Michigan Law Review instituted the personal statement and the holistic-review process for the purpose and with the intent of awarding the race and sex preferences that have been outlawed by Proposal 2 (codified at Mich. Const. art. I, § 26(2)) and federal anti-discrimination statutes. The Michigan Law Review thinks that it can continue awarding illegal race and sex preferences as long as applicants indicate their demographic traits in an essay or personal statement rather than by checking a box, and as long it uses the term "holistic review" to describe the illegal discriminatory preferences that it confers upon women, racial minorities, homosexuals, and transgender people. But race and sex preferences are illegal no matter how they are carried out and no matter what they are called. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 206 (2023) ("Eliminating racial discrimination means eliminating all of it.").

22.   The Michigan Law Review also engages in illegal race and sex discrimination when selecting articles for publication. In its "Mission State-

ment," the Law Review claims that it "seeks to elevate a diversity of viewpoints, ideas, and identities and to amplify historically marginalized voices." *About Us*, Michigan Law Review, https://michiganlawreview.org/about-us [https://perma.cc/5FQR-QRKQ] (last visited June 11, 2025). The Law Review implements its Mission Statement by consciously and intentionally discriminating in favor of inferior manuscripts submitted by women, racial minorities, and homosexual or transgender authors, while rejecting better manuscripts submitted by heterosexual and non-transgender white men. The Law Review also consciously and intentionally discriminates in favor of women, racial minorities, and homosexual or transgender people when selecting authors for invited pieces such as book reviews and responses.

23. The Michigan Law Review also instructs its student editors to engage in illegal race and sex discrimination when citing sources. In its production manual, the Law Review repeatedly instructs its editors to cite sources written by "authors who are traditionally underrepresented in legal academia" and that "gives voice to historically marginalized identities" rather than articles written by white men. Whenever a manuscript makes an assertion that requires a citation for support, the Law Review's production manual provides the following instruction:

> Highlight the unsupported text in red. Leave a comment for the author explaining the issue and provide a specific recommendation for the source that should be cited. Be sure to include pincites and signals, as appropriate. ***MLR prefers to cite authors who are traditionally underrepresented in legal academia.***

> **When suggesting a source, please use your best efforts to lo-
> cate a source that gives voice to historically marginalized
> identities.**

Volume 123 Production Manual at 20 (attached as Exhibit 1) (boldface in orig-

inal, highlighting removed). This instruction appears in the Michigan Law Re-

view's previous instruction manuals as well.

24.   When the Michigan Law Review's production manual refers to au-

thors who are "traditionally underrepresented in legal academia," it excludes

from this category Republicans and Protestant Christians, even though Repub-

licans and Protestants are significantly underrepresented in legal academia

when compared to their numbers in the overall U.S. population. *See* James

Lindgren, *Measuring Diversity: Law Faculties in 1997 and 2013*, 39 Harv. J.L. &

Pub. Pol'y 89, 93 (2015) (noting that the two most underrepresented groups

on law-school faculties when compared to the makeup of the overall U.S. pop-

ulation are Republicans and Protestant Christians); *id.* at 99 ("Republicans

and Christians are more consistently underrepresented on law faculties than

African Americans or women"). Instead, the Michigan Law Review limits the

category of "traditionally underrepresented" demographics to women, non-

Asian racial minorities, homosexuals, and transgender people, and awards il-

legal preferences to these groups (and only these groups) in violation of state

and federal anti-discrimination laws.

25.   Illegal DEI practices permeate everything that the Michigan Law Review does. The job description for the role of "Executive Development Editor," which is currently held by Delpha Carpenter, reads (in relevant part) as follows:

> The Executive Development Editor (EDE) recruits the incoming class of Associate Editors, manages the budget, assists with orientation, builds community, and leads the journal's diversity, equity, and inclusion efforts . . . .
>
> This role is ideal for someone who . . . is passionate about equity issues . . . .
>
> The EDE is responsible for . . . leading the journal's diversity, equity, and inclusion efforts. . . .
>
> The EDE leads multiple committees including the Social Committee and the Diversity, Equity, and Inclusion Committee. . . .
>
> The EDE, separately and in conjunction with the committee, is in charge of the diversity, equity, and inclusion efforts for the journal. The EDE should have a vision of diversity, equity, and inclusion within the journal and should facilitate it through recruitment, journal culture, and scholarship. The EDE is encouraged to bring this perspective to the journal in all areas.

Application Procedures for Electing and Selecting the Volume 124 Editorial Board at 20–21 (attached as Exhibit 2). These "diversity, equity, and inclusion efforts" consciously and intentionally subordinate quality and academic merit by awarding illegal discriminatory preferences to members of the journal's preferred demographics: women, non-Asian racial minorities, and homosexual

and transgender people. And they infest every aspect of the Michigan Law Review's decisionmaking, including its selection of student members and editors, its selection of manuscripts submitted for publication, its selection of authors chosen to write invited pieces such as book reviews and responses, and its citation of sources.

## FACTS RELATED TO STANDING

26. Plaintiff FASORP is a voluntary membership organization founded in 2018. FASORP seeks to restore meritocracy in academia and eliminate the corrupt and illegal race and sex preferences that subordinate academic merit to so-called diversity considerations.

27. FASORP has at least one member who has applied for membership on Volume 124 of the Michigan Law Review and meets all the eligibility requirements for membership on the Law Review. FASORP also has members who have submitted articles to the Michigan Law Review, who are ready and able to submit articles to the Michigan Law Review, and who intend to submit their future scholarship to the Michigan Law Review.

28. Individual A is a member of FASORP. He is a tenure-track law professor at an ABA-accredited law school. Individual A is a white man and is neither homosexual nor transgender.

29. Individual B is a member of FASORP. He is a tenured law professor at an ABA-accredited law school. Individual B is a white man and is neither homosexual nor transgender.

30.   Individual C is a member of FASORP. He is a tenured law professor at an ABA-accredited law school. Individual C is a white man and is neither homosexual nor transgender.

31.   Individuals A, B, and C have submitted articles to the Michigan Law Review in the past and stand able and ready to submit additional manuscripts to the Michigan Law Review for publication in future volumes. *See Carney v. Adams*, 592 U.S. 53, 60 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003); *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993). But the pervasive and ongoing use of race and sex preferences at the Michigan Law Review prevents Individuals A, B, and C from competing with other authors who submit articles to the law review on an equal basis. Specifically, Individuals A, B, and C are unable to compete on an equal basis with authors who are women, racial minorities, homosexuals, or individuals who engage in gender-nonconforming behavior or identify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666.

32.   Individuals A, B, and C will also suffer injury in fact from Michigan Law Review's decisions to subordinate academic merit and deploy race and sex preferences when selecting the student members and editors who determine whether their articles will be published, as their submissions will be judged by less capable students with lower academic credentials and abilities. In addition, students whose membership on the law review is attributable to race and sex preferences are more likely to discriminate against articles written

by white, heterosexual men who do not engage in gender non-conforming be-havior than students who earned their place on the law review through their academic performance. All of this inflicts injury in fact.

33.   Individuals A, B, and C are also suffering injury in fact from the Michigan Law Review's illegal and discriminatory citation policies, which instruct editors to cite sources authored by "traditionally underrepresented" de-mographics and "historically marginalized identities" and discourage cita-tions of sources written by heterosexual and non-transgender white men. This makes scholarship written by white men such as Individuals A, B, and C less likely to be cited in the Michigan Law Review, which inflicts injury in fact.

34.   Individual A has submitted at least one previous manuscript to the Michigan Law Review and his previous submissions were all rejected. Individ-ual A is currently working on an article that he intends to submit to the Mich-igan Law Review in August of 2025. Law reviews consider and accept submis-sions during two "cycles" that occur each year — one in February and one in August. Individual A will submit additional manuscripts to the Michigan Law Review in the future, and he will continue doing so for as long as he remains a law professor.

35.   Individual B has submitted several previous manuscripts to the Mich-igan Law Review and all were rejected, though he has successfully placed arti-cles in equally and higher-ranked law reviews on numerous occasions. Individ-ual B will submit additional manuscripts to the Michigan Law Review in the future, and he will continue doing so for as long as he remains a law professor.

36.   Individual C has submitted at least seven manuscripts to the Michigan Law Review, all of which were rejected. Individual C is currently working on two articles that he plans to submit to student-edited law reviews when completed, including the Michigan Law Review, and he plans to submit one of those articles in February of 2026 and the other in August of 2026. Individual C will submit additional manuscripts to the Michigan Law Review in the future, and he will continue doing so for as long as he remains a law professor.

37.   Individual D is a member of FASORP. He recently completed his 1L year at the University of Michigan Law School and is now a rising 2L. Individual D is a white man and is neither homosexual nor transgender. Individual D recently applied for membership on Volume 124 of the Michigan Law Review, and is awaiting a decision on whether he will be accepted for law-review membership. But the pervasive and ongoing use of race and sex preferences on the Michigan Law Review prevents Individual D from competing with other applicants for Law Review membership on an equal basis. Specifically, Individual D is unable to compete on an equal basis with applicants who are women, racial minorities, homosexuals, or individuals who engage in gender-nonconforming behavior or identify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666.

38.   Individual D is suffering additional injury in fact because the Law Review will not allow a known opponent of race and sex preferences to serve on the Holistic Review Committee. *See* paragraphs 20, *supra*. Individual D must therefore conceal his opposition to race and sex preferences and his support

for merit-based membership selection unless he wishes to disqualify himself from the positions of editor-in-chief, managing editor, or executive development editor, because the Michigan Law Review will never appoint a known opponent of race and sex preferences to an editorial position that comes with membership on the Holistic Review Committee. *See id.* This inflicts injury in fact.

39.   Individual D is suffering additional injury in fact because the Law Review will not allow a known opponent of DEI to serve as executive development editor. The job description requires the executive development editor to "lead[] the journal's diversity, equity, and inclusion efforts," be "passionate about equity issues," lead the Law Review's "Diversity, Equity, and Inclusion Committee," and "have a vision of diversity, equity, and inclusion within the journal and should facilitate it through recruitment, journal culture, and scholarship." Individual D must therefore conceal his opposition to DEI practices unless he wishes to disqualify himself from the position of executive development editor, because the Michigan Law Review will never appoint a known opponent of DEI to the position of executive development editor. This inflicts injury in fact.

40.   All of these Article III injuries are fairly traceable to the allegedly unlawful conduct of the defendants, who are discriminating on account of race and sex in violation of 42 U.S.C. § 1981, Title VI, and Title IX. And all of these injuries will be redressed by the requested relief, which will enjoin the Michigan Law Review and its editors from continuing these discriminatory policies

and require them to adopt colorblind and sex-neutral practices with regard to their selection of members and articles and their citations of sources.

41.   FASORP has additional members who are suffering injuries in fact similar or identical to those suffered by Individuals A, B, C, and D. These individuals are only a representative sample and not an exclusive list of the members of FASORP who would have standing to sue the defendants if they sued as individuals.

42.   The interests that FASORP seeks to protect in the litigation are germane to the organization's purpose. FASORP seeks to restore meritocracy at American universities by eliminating the use of race and sex preferences, as stated on its website. *See* FASORP, https://fasorp.org (last visited June 17, 2025).

43.   Neither the claims asserted by FASORP nor the relief requested in this litigation requires the participation of the organization's individual members.

## CLAIMS

### Count One: Violation of Title VI (42 U.S.C. § 2000d)

44.   Each of the defendants is violating Title VI by discriminating in favor of racial minorities and against whites when selecting members, editors, articles, and citations for the Michigan Law Review.

45.   The University of Michigan is a "program or activity" that "receives Federal financial assistance" within the meaning of Title VI.

46.   The Michigan Law Review Association is also a "program or activity" that "receives Federal financial assistance" within the meaning of Title VI. The Michigan Law Review Association is subject to the anti-discrimination requirements of Title VI because, among other reasons: (1) The student members of the Michigan Law Review receive federal financial assistance to pay their law-school tuition; (2) enrollment at the University of Michigan Law School is a prerequisite for membership on the journal; (3) the Law Review depends on the University of Michigan and the University of Michigan Law School to disclose the first-year grades that the Michigan Law Review uses to select its members; (4) the Michigan Law Review is subject to rules and regulations that the University of Michigan and the University of Michigan Law School choose to establish for the Michigan Law Review; (5) the faculty at the University of Michigan Law School assist and advise the Michigan Law Review; (6) the University of Michigan general counsel's office advises the Michigan Law Review on the legality of its discriminatory race and sex preferences; (7) the Michigan Law Review occupies space on the campus of the University of Michigan; and (8) the Michigan Law Review draws upon the University of Michigan's resources.

47.   FASORP therefore seeks declaratory and injunctive relief that prohibits the defendants, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the Michigan Law Review's selection of members, editors, articles, and citations,

and that compels them to select the Law Review's members, editors, articles, and citations in a colorblind manner.

48.   FASORP also seeks nominal damages for the defendants' illegal discriminatory acts. *See* 42 U.S.C. § 2000d-7(a)(1) (abrogating state sovereign immunity for Title VI claims).

49.   FASORP seeks this relief under 42 U.S.C. § 1983, the implied right of action that the Supreme Court has recognized to enforce Title VI, *see Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979), and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908).

## Count Two: Violation of Title IX (20 U.S.C. § 1681(a))

50.   Each of the defendants is violating Title IX by discriminating in favor of women, homosexuals, and transgender people and against heterosexual and non-transgender white men when selecting members, editors, articles, and citations for the Michigan Law Review.

51.   The University of Michigan is a "program or activity" that "receives Federal financial assistance" within the meaning of Title IX.

52.   The Michigan Law Review Association is also a "program or activity" that "receives Federal financial assistance" within the meaning of Title IX. The Michigan Law Review Association is subject to the anti-discrimination requirements of Title IX because, among other reasons: (1) The student members of the Michigan Law Review receive federal financial assistance to

pay their law-school tuition; (2) enrollment at the University of Michigan Law School is a prerequisite for membership on the journal; (3) the Law Review depends on the University of Michigan and the University of Michigan Law School to disclose the first-year grades that the Michigan Law Review uses to select its members; (4) the Michigan Law Review is subject to rules and regulations that the University of Michigan and the University of Michigan Law School choose to establish for the Michigan Law Review; (5) the faculty at the University of Michigan Law School assist and advise the Michigan Law Review; (6) the University of Michigan general counsel's office advises the Michigan Law Review on the legality of its discriminatory race and sex preferences; (7) the Michigan Law Review occupies space on the campus of the University of Michigan; and (8) the Michigan Law Review draws upon the University of Michigan's resources.

53.   FASORP therefore seeks declaratory and injunctive relief that prohibits the defendants, their successors in office, and anyone in active concert or participation with them, from discriminating on account of sex in the Michigan Law Review's selection of members, editors, articles, and citations and that compels them to select the Law Review's members, editors, articles, and citations in a sex-neutral manner. The Court should also restrain these defendants from discriminating in favor of homosexuals or transgender people, which constitutes discrimination on the basis of sex. *See Bostock v. Clayton County*, 590 U.S. 644 (2020); *Ames v. Ohio Dep't of Youth Services*, 605 U.S. ---, 2025 WL 1583264 (2025).

54.   FASORP also seeks nominal damages for the defendants' illegal discriminatory acts. *See* 42 U.S.C. § 2000d-7(a)(1) (abrogating state sovereign immunity for Title IX claims).

55.   FASORP seeks this relief under 42 U.S.C. § 1983, the implied right of action that the Supreme Court has recognized to enforce Title IX, *see Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979), and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908).

### Count Three: Violation of 42 U.S.C. § 1981

56.   42 U.S.C. § 1981(a) guarantees individuals the same right to make and enforce contracts without regard to race. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens").

57.   42 U.S.C. § 1981(a) protects whites on the same terms that it protects "underrepresented" racial minorities. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295 (1976) ("[T]he Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

58.   Each of the defendants is violating 42 U.S.C. § 1981(a) by discriminating in favor of racial minorities and against whites when selecting members and articles for the Michigan Law Review.

59.   Students who are offered membership on the Michigan Law Review execute a contract with the Law Review before they begin their work on the journal. Authors who receive offers of publication in the Michigan Law Review execute a contract with the Law Review before their article is published. But white student applicants and white authors who submit articles to the Michigan Law Review do not have the "same right . . . to make and enforce contracts" that minority applicants and authors enjoy.

60.   FASORP therefore seeks declaratory and injunctive relief that prohibits the defendants, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the Michigan Law Review's selection of members, editors, and articles, and that compels them to select the Law Review's members, editors, and articles in a colorblind manner.

61.   FASORP also seeks nominal damages for the defendants' illegal discriminatory acts.

62.   FASORP seeks this relief under 42 U.S.C. § 1983, the implied right of action that the Supreme Court has recognized to enforce 42 U.S.C. § 1981(a), and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908). *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

63.   FASORP is not asserting a section 1981 claim against the University of Michigan as an institutional defendant, as 42 U.S.C. § 1981 and 42 U.S.C.

§ 1983 authorize lawsuits only against "persons" and not states or state institutions, and neither the Declaratory Judgment act nor the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), abrogates a state's sovereign immunity. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 64–71 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

### Count Four: Violations of the Equal Protection Clause

64.   As public institutions, the University of Michigan and the Michigan Law Review Association are subject to the commands of the Equal Protection Clause, which prohibits state universities and their components from denying to any person the equal protection of the laws. *See* U.S. Const. amend. XIV, § 1.

65.   The Supreme Court has held that the Equal Protection Clause prohibits race and sex discrimination by state universities. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 206 (2023); *United States v. Virginia*, 518 U.S. 515, 531 (1996).

66.   The Michigan Law Review's use of race and sex preferences in its members, editors, articles, and citations is incompatible with the Supreme Court's interpretation of the Equal Protection Clause.

67.   FASORP therefore seeks declaratory and injunctive relief that prohibits the defendants, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race or sex in the Michigan Law Review's selection of members, editors, articles, and citations, and that compels them to select the Law Review's members, editors, articles,

and citations in a colorblind or sex-neutral manner.

68. FASORP also seeks nominal damages for the defendants' illegal discriminatory acts.

69. FASORP seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908).

70. FASORP is not asserting an Equal Protection claim against the University of Michigan as an institutional defendant, as 42 U.S.C. § 1983 authorizes lawsuits only against "persons" and not states or state institutions, and neither the Declaratory Judgment Act nor the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), abrogates a state's sovereign immunity. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 64–71 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

## Count Five: Speech Clause Violations

71. The Supreme Court has interpreted the First and Fourteenth Amendments to prohibit state universities and their components from abridging students' freedom of speech. *See, e.g.*, *Rosenberger v. Rector and Visitors of University of Virginia,* 515 U.S. 819 (1995).

72. The defendants are abridging Individual D's freedom of speech because they will not allow a known opponent of race and sex preferences or DEI to serve on the Holistic Review Committee. Nor will they allow such a person

to hold the positions of editor-in-chief, managing editor, or executive development editor, as those editorial posts come with an automatic seat on the Holistic Review Committee. Individual D — along with all other students at the University of Michigan Law Review who oppose race and sex preferences or DEI — must therefore self-censor and conceal his opposition to these practices to preserve his ability to attain these positions on the Michigan Law Review.

73.  FASORP therefore seeks declaratory and injunctive relief that prohibits the defendants, their successors in office, and anyone in active concert or participation with them, from discriminating against opponents of race and sex preferences or DEI when selecting members of the Holistic Review Committee, or when selecting people for editorial positions or membership on the Michigan Law Review.

74.  FASORP seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908).

75.  FASORP is not asserting a Speech Clause claim against the University of Michigan as an institutional defendant, as 42 U.S.C. § 1983 authorizes lawsuits only against "persons" and not states or state institutions, and neither the Declaratory Judgment act nor the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), abrogates a state's sovereign immunity. *See*

*Will v. Michigan Dep't of Police*, 491 U.S. 58, 64–71 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

### Count Six: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)

76.   42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

77.   Defendants Foster, Magrath, and Carpenter have conspired among themselves and with others to deny the equal protection of the laws, and to deny equal privileges and immunities under the laws, to white men who are neither homosexual nor transgender, including Individuals A through D, as well as other heterosexual and non-transgender white men who apply for membership or submit articles for publication in the Michigan Law Review.

78.   The Michigan Constitution, as well as federal anti-discrimination statutes, clearly and unequivocally ban race and sex preferences at state uni-

versities. Yet Foster, Magrath, and Carpenter have conspired to deprive heterosexual and non-transgender white men of the equal protection of these laws, and equal privileges and immunities under these laws.

79.   FASORP therefore seeks declaratory and injunctive relief that prohibits defendants Foster, Magrath, and Carpenter, their successors in office, and anyone in active concert or participation with them, from implementing their conspiracy to discriminate on account of race or sex in the Michigan Law Review's selection of members, editors, articles, and citations, and that compels them to select the Law Review's members, editors, articles, and citations in a colorblind or sex-neutral manner.

80.   FASORP also seeks nominal damages for the defendants' illegal discriminatory acts.

81. FASORP seeks this relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and any other law that might supply a cause of action for the requested relief, including the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908).

82. FASORP seeks this relief against defendants Foster, Magrath, and Carpenter, and any other individual who is found to be a party to their unlawful conspiracy, as 42 U.S.C. § 1985(3) authorizes lawsuits only against "persons" and not states or state institutions, and 42 U.S.C. § 1985 does not abrogate a state's sovereign immunity.

## DEMAND FOR RELIEF

83.   FASORP respectfully requests that the court:

a.    declare that the defendants are violating Title VI, Title IX, and the Equal Protection Clause in the Michigan Law Review's selection of members, editors, articles, and citations;

b.    declare that the individual defendants are violating 42 U.S.C. § 1981 in the Michigan Law Review's selection of members, editors, and articles;

c.    declare that the individual defendants are violating the First Amendment by excluding known opponents of race and sex preferences or DEI from membership on the Holistic Review Committee, or from holding the positions of editor-in-chief, managing editor, or executive development editor;

d.    declare that defendants Foster, Magrath, and Carpenter, and any other individual who is found to be a party to their unlawful conspiracy, are violating 42 U.S.C. § 1985(3) by conspiring to deny the equal protection of the laws, and equal privileges and immunities under the laws, to heterosexual and non-transgender white men who apply for membership or submit articles for publication in the Michigan Law Review;

e.    permanently enjoin the defendants, their successors in office, and anyone in concert or participation with them from considering race, sex, sexual orientation, or gender identity when selecting members, editors, articles, or citations for the Michigan Law Review;

f.     permanently enjoin the defendants their successors in office, and anyone in concert or participation with them from implementing any practice that gives discriminatory preferences to women, racial minorities, homosexuals, or transgender people;

g.     permanently enjoin the defendants, their successors in office, and anyone in concert or participation with them, from soliciting any information about the race, sex, sexual orientation, or gender identity of any person seeking or applying for authorship, membership, or an editorial position in the Michigan Law Review;

h.     order the Michigan Law Review to establish new policies for selecting members, editors, articles, and citations that are based entirely on academic and scholarly merit and that explicitly disavow any consideration of race, sex, sexual orientation, or gender identity, and to submit that revised policy to this Court for its review and approval within 30 days of judgment;

i.     appoint a court monitor to oversee all decisions relating to the Michigan Law Review's selection of members, editors, articles, and citations, to ensure that these decisions are free from illegal race and sex preferences;

j.     enjoin the University of Michigan from accepting any federal funds until the court monitor certifies that Michigan Law Re-

view has: (1) eliminated every vestige of race and sex prefer-
ences in its selection of members, editors, articles, and cita-
tions; and (2) has adopted and implemented colorblind and sex-
neutral practices with respect to its selection of law-review
members, editors, articles, and citations;

k.    award nominal damages;

l.    award costs and attorneys' fees;

m.    grant other relief the Court deems just, proper, or equitable.

Respectfully submitted.

RYAN GIANNETTI*
DC Bar No. 1613384
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
ryan.giannetti@aflegal.org

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

BENJAMIN M. FLOWERS
Ohio Bar No. 0095284
Ashbrook Byrne Kresge Flowers LLC
Post Office Box 8248
Cincinnati, Ohio 45249
(614) 705-6603 (phone)
(513) 216-9882 (fax)
bflowers@abkf.com

* *pro hac vice* application pending

Dated: June 18, 2025

*Counsel for Plaintiff*

## INDEX OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | Michigan Law Review's Production Manual, Describing Editing Procedures and Guidelines |
| 2 | Michigan Law Review's Application Procedures, Describing Editors' Roles and Responsibilities |